Okay, when you're ready. May it please the court, Davina Tan on behalf of Victor Castaneda-Montes, I'd like to reserve two minutes for rebuttal. Okay, keep your eye on the clock. Counts down as you know. The dispute in this case is narrow and it is resolved by this court's decisions in Griselle, Chavez, Solis, and Wherley. California Penal Code 276.3d penalizes the violation of a protective order if committed through an act of violence or a credible threat of It's undisputed that under California law, these words violence do not require the use of violent force, as that term was defined in the Supreme Court. Can a protective order in California be a protective order against violence against property or against animals? Yes. Okay, if the government disagrees, I guess they can tell me. I don't believe that the government disagrees with any of the textual or performed in this case, that the violence that is required for a protective order to be entered or violated does not require the use of violent force as that term is defined in Johnson. Their only contention is that Mr. Castaneda is required to point to a specific case in which this has occurred. He doesn't. Well, the categorical approach that we may be required to use here, um, limit us to just the statute. I can consider the statute in the context under which the restraining order was issued. It limits us to the statutory elements in this case, because the statute does not require any use of force as that term is defined by Johnson. So if we look to the specific facts in this case, that would be going beyond what the statute would require. Would you agree that if we did not have the Supreme Court mandated a categorical approach that on the facts as presented, this may weaken, would have weakened your position? It would have weakened it slightly, but frankly, in this case, it looks like the threat was just, he was going to kick someone's butt. So even if we stripped away all the levels of categorical, et cetera, I'm not sure that this would have been a crime of violence as that term is defined in the first Johnson case, which is the type of violence that would cause physical injury or, um, or pain. But in this case, we do have several layers of categorical analysis that we need to perform. And in this case, as I said, the government doesn't dispute that the statute on its face can be violated without any force. So I would, oh, go ahead and please judge Gould. That's I, if I could interject a question, is there a realistic probability that the government would prosecute someone under this California statute for violating a restraining order relating to cruelty to animals or violating some order about property? There is a realistic probability as this court has defined how you would find a realistic probability. And that is you look to see if the statute on its face is overbroad. And if so, the court need not go any further. And there are two very recent decisions from this court that demonstrate that. Uh, one of them is United States versus Worley, which is a case which involved Washington's riot statute, which required the use of force while armed. Now the court could not identify a single case under Washington law that defined what force meant for that statute. So they took a force from a different statute, assault, and said that under Washington law, force for assault requires only minimal force. Therefore, on its face, the Washington statute could be violated without any actual use of force and held that the Duenas-Alvarez analysis was satisfied, that that showed a realistic probability. So starting from Vidal and Grisel, en banc decisions of this court, and most recently in Worley and Chavez Solis, this court has been very clear that there's several ways to show a realistic probability. One is to point to an example. Now that's difficult because the way we do that is we look at appellate case law and almost no cases are appealed in California courts. So we don't really, that's not a really good way to find cases. The other though, is to look at the text of the statute as it's been interpreted by the courts. And in this case, it's undisputed. The text of this statute, as it's been interpreted both by this court and the California courts, does not require the use of force against the person of another. Let me pursue a little bit the point that you just made. Obviously this would be a much easier case under Duenas-Alvarez if we did have California case law on point that's published. And you said that these cases are not appealed or tend not to be appealed. There's an explanation as to why we don't have appellate case law. Have you done any search for, I don't know, I don't even quite know where you do the search. I mean, I guess you could go to California practitioners and get affidavits from them that say, you know, I've had a client convicted on this or that. Do we have to do that? I don't think we have to do that. I think that those cases are really clear. Worley, Chavez, Solis, and Grisel are clear that we don't have to do that. I, you know, I did ask around. Nobody even knew anyone ever convicted of the statute, let alone, you know, remembered the facts of it. There's a very recent case from the first circuit. I think it was white. It was either US versus white or white versus Lynch, which I thought was very thoughtful on this analysis. It said, you know, we just don't know what's happening in the state court. So to impose this burden on a defendant, or in that case, I think it was an immigrant, to find a case, it doesn't add anything. It doesn't do any work. In a case like ours, especially where it's undisputed that not only could you violate a protective order by doing harm to a property, to an animal or assaulting someone or battering someone, which also are overbroad under this court's and do any extra work for us. Well, it would give us an example of what we think might exist given the general propositions in the case law. But I'm sympathetic with both sides in a sense here. You're arguing about what happens when you actually don't know and all you have is the texts of the statutes, even though there is something happening on the ground. I remember writing an opinion shortly after Duenas Alvarez came down, Judge very best looking through all the unpublished opinions of the California court, of the California courts, looking in newspaper articles. And I remember complaining that this was really a very inadequate way of finding out what the California courts do, in fact, and despairing of performing the function that you would do, for example, if you are an anthropologist or whatever it is. I think we're just kind of stuck with what we've got. Yeah. I would agree with that. If the court has no further questions. Why don't we hear from the government and then you've got some time. Yeah. Good morning, Your Honors, and may it please the court. Francis D. Giacco on behalf of the United States. The lower court did not commit plain error in applying the 16 level enhancement to the prior conviction for 273.6 of the California penal code, because that crime is a crime of violence under the sentencing guidelines. Let me understand the plain error issue here. As I read your brief, your argument as to plain error is that the court misinterpreted California law. And I took it to mean that if we conclude that California court did, excuse me, the law, that then is plain error. Because I only understood you'd argue about was the meaning of the statute. Your Honor, there is an argument regarding the meaning of the statute, but I think given the nature of the arguments advanced by Castaneda-Montes and the amount of legal gymnastics that is required to cross-reference and look at judicial opinions, the fact that it was not only not objected to at the lower court level, but was also conceded by Castaneda-Montes and his attorney at that level. That was kind of a concession. It was, they weren't focused on this point. Yeah. But Your Honor, I think that it doesn't rise to the level of plain error in addition to the- But I want to make, maybe I'll make my point more precisely, or at least I'll try to do it. If we disagree with you as to the proper construction of the statute, is that the end of it? Is that then plain error? Because I understood your brief simply to argue about the meaning of the statute. You didn't go into the other elements of plain error and so on. You just argued about what the statute meant. Your Honor, I don't believe that if the court does disagree with the United States' position on this, that it's an automatic plain error finding. I think first and foremost, this would be the first opinion by the Ninth Circuit regarding 273.6 on this issue. And therefore, that alone would probably necessitate a closer look at whether plain error is actually committed by the lower court. Why didn't you make those arguments then? Because the only argument I saw in your brief is as to the meaning of the statute. Your Honor, I believe there is a reference in the briefing to failing to meet the plain error standard. However, there isn't an entire section devoted to it. Yeah, there's hardly anything except, I mean, you make very good arguments both sides as to the meaning of the statute. But as I read the briefs, we're really just talking about the meaning of the statutes in the briefs. Certainly, Your Honor. And I'll turn my focus to that. I think the analysis here that was set forth in Duane S. Oliver's really does control, and it creates a spectrum that the court has to engage in regarding what is the theoretical possibility of the application of the statute to what is a realistic probability. Sure, of course. And here, Castaneda-Montes basically makes three arguments about 273.6, that the violence can be slight touching, that the violence can be towards animal or property, and that the credible threat to safety does not necessarily involve a threat to physical safety. And so, taking from Castaneda-Montes' argument, that means that this court would have to accept that a California court would accept a conviction under 273.6 where someone who had a restraining order against them, say it was to be more than 250 yards away from a person, violates that restraining order by being closer than 250 yards away. But what if the restraining order is, stay away from your former wife's house and don't kill any of the animals? And he comes over and he shoots the cat. Does that violate the restraining order under the statute here? It violates the restraining order, Your Honor. However, it doesn't necessarily mean that it violates or, excuse me, commits the element of the use of violence or credible threat of violence. Looking at 273.6- But I thought I heard you say violence against property or animals counts. Your Honor, in the restraining order violation, however, looking at 273.6-D, there are actually two separate elements. One is the violation of the restraining order and one is the use of violence or credible threat of violence. And so, the act doesn't necessarily need to be both. You can violate a restraining order, say one for distance, and then also in addition to that, commit an act of violence towards a person or a credible threat of violence towards a person. Oh, I understand that you can. That, I think, is conceded on all sides. The question is not whether you can be held responsible for violence or threat of violence against a person, but whether you can be held for other things as well. Certainly, Your Honor. And under Castaneda-Montez's analysis of the statute, the argument would need to necessarily include that this statute would result in a conviction where somebody simply made a threat to someone that they were going to literally touch that person's car, and that an actual conviction in a California state court would result from that conduct. And that's exactly... Well, how about if they didn't say, I'm going to threaten you by touching your car, I am going to take my baseball bat and knock the windows out. Certainly, Your Honor. Would that qualify under the statute? I think it could. But for this to be violence in the federal sense, it's got to be violence or threatened violence against a person. Yes, Your Honor. And I think the hypotheticals that both I have and the Court have come up with are exactly why Duenas-Alvarez exists in that analysis, because these are all theoretical possibilities until we get closer to a realistic probability, which is why... But theoretically, here's the problem, and it's the problem that Ms. Chen and I were going back and forth with, which is to say these tend to be low-level things and about which you don't get much appellate law. So how can you tell me that this is merely theoretical when we've got a statute? If you look at the various cases in the statutes, it appears a realistic possibility that they can be applied in the way that Ms. Chen is arguing. And you're saying, but in fact, there's not a realistic possibility, but you don't know. And I think you've got to agree that given the nature of these cases, we just don't get much appellate law. I think that we don't get maybe as much as we see in some other statutes. However, the United States did cite five cases that were at the appellate level involving 273.6 and various subsections of it, but one of them being D, and those involved acts of violence or credible threats of violence against people. And there were, in fact, no other cases, and there were none cited by Castaneda-Montes, and it was conceded that none were capable of being cited that involved towards property, towards animals, that involved slight touching or anything of that nature. And that's exactly why Duane DeSalvo's opinion requires, and I quote, that the defendant must at least point to his own case or other case in which the state courts, in fact, did apply the statute in the special non-generic manner for which he argues. Does that passage say, oh, I'm sorry, just go up. If I could interject a question, I'd like to focus you for a minute on the plain error aspect of this appeal. So my understanding is there are four points that normally get ticked off to recognize a plain error. First, there has to be an error. Second, it has to be plain or obvious. Third, it has to affect substantial rights. But then there's also an element that if it meets those first three, we have discretion to relieve the person of their forfeit if it would not impair the fairness, integrity, or reputation of the court. And it's that fourth element that I wonder about here. If we don't recognize a plain error here, how does that impair the fairness or integrity or reputation of our court? Your Honor, I think the fairness and reputation of the court would be error in this case. And I think even if this court followed the analysis that Castaneda-Montes urges it to do and found an error, I don't think that it would be plain, as I think is noted by the arguments in the discussion here of Duenas-Alvarez and the subsequent decisions, including one, Chavez-Solis, which came actually just a week prior to when the United States filed its answering brief in this case and therefore wasn't available to the lower court in the analysis at the time. So I think given that error, if it were to be found to be error, it would not be plain, and a finding that it wasn't plain error would not impede on the court's fairness or reputation. Okay, thank you. However, counsel, should we read anything into the fact that under the federal definition that the Sentencing Commission gives us to crimes of violence, the absence of simple assault, because the way I interpret what we have is a simple assault threat, and surely it fits under the California statute, but that is not listed as one of those enumerated, designated crimes of violence. It lists aggravated assault, which I take means with a weapon, a threatened use of a weapon. Is there anything to be read into this? I don't think so, Your Honor, and here's why, is that the 273.6 statute would fall under the residual portion of the crime of violence federal definition where the state statute has to just involve a violence or a threat of violence, and in fact, actually closely mirrors the language that's in 273.6. And so I don't think it needs to necessarily be an enumerated offense for this court to find that it falls within the crime of violence definition. Further, Your Honors, I think some distinction of Chavez-Solis is important here, because it does represent a different kind of analysis where the defendant wasn't required in those cases to provide an actual case, but could rely on the text of the statutes, and Grisel and Vidal were also cases of that nature. However, as I was discussing before with the spectrum of theoretical possibility to realistic probability, the plain language of those statutes where the broader scope was, and as Chavez-Solis noted, the court there noted, was readily apparent from the statute's language. That provided something that was closer to the realistic probability that's required under the Duenas and Alvarez analysis. And what's interesting to note about those cases, both Chavez-Solis and Grisel, the court then engaged in an analysis of actual cases in which the defendant did not fall within the crime of violence definition. And this was done in a very solid fashion. And so... This is a tricky case for me though, because I do think this is the sort of situation that you're not going to get much appellate case law. We have some, but not enough that I'm convinced, or more than that. I'm quite convinced that there's a whole body of law out there that doesn't show up. Certainly, Your Honor. I think that's fairly noted and we kind of live in the world in which we do. But I think that's exactly why Dwayne S. Oliver has required something closer to a realistic probability. Because having an absence of case law and having a statute that so plainly mirrors that of the federal definition of crime of violence, to include an act of violence or a threat of violence. Now, who has to show? Is there any case law that tells us who has the burden of proof as to realistic probability under Dwayne S. Oliver? Yes, Your Honor. Dwayne S. Oliver notes that it is the defendant or the appellant, Castaneda-Montez in this case, who has the burden of showing that it is a realistic probability that the statute is in fact applied in the manner in which he argues. Or a realistic probability that it could be or would be. Okay. I get it. Exactly, Your Honor. Now, we've taken you over time. So if you want to sum up. Yes, Your Honor. I'll simply note that the requirement of Dwayne S. Oliver and that must language that is used to interpret Chavez Solis and that line of cases to only require reference to the plain language of the statute would vitiate Dwayne S. Oliver as completely. It sounds as though you disagree with our decision in Worley. Your Honor, like I said, I think it is a spectrum. I think there is. There is. But what you just said, it seems to me is inconsistent with our decision in Worley. Your Honor, I think allowing an appellant or defendant to simply rely on the text of the statute would vitiate Dwayne S. Oliver as I think. Well, yeah, but when you say that and you say you've got to have a case, you're right up against Worley that says you don't have to have one. Yes, Your Honor. And I don't think, though, that that is a bar to or that is an invitation in every single case. Oh, I understand that. But the point you're making, which is the point you want us to accept, is that you have to have a case that's inconsistent with our now case law. Counsel, a three-judge panel like ours isn't really free to disregard or put aside some prior precedent. Certainly, Your Honors. And let me be more precise with my language. I think that there could be situations, like in Chavez-Eliz, like in Worley, where the plain text of the statute shows its broader scope, or by looking at the definitions within that statute, the broader scope can be adjudicated by a court, at the lower court or the appellate level. However, Dwayne S. Oliver still obviously has a place in which a case needs to be provided. And it is for situations like 273.6 here, where the broader scope requires cross-referencing this statute with this case and this other cross-reference to determine this non-generic, specific way in which the statute could be applied. Okay. We got the point. Thank you, Your Honors. Okay. Thank you. Response? Of course, this court knows that it can't overrule Worley. What I'd like to focus on are the prongs of plain error. I think it's clear that it's error. In terms of plain, the government seems to indicate that because Chavez-Eliz came out after the sentencing, that that renders it not plain. But the Supreme Court has addressed that very issue in both Johnson and Henderson. We look at the plain error analysis at the time of appellate review. And I think that's really important for two reasons. One is we do all the legal analysis first, and then we determine whether or not it's plain. We don't decide whether something's plain just based on common sense. That's what the Supreme Court told us in Johnson and Henderson. And also in Henderson, the Supreme Court told us plain error review isn't like a grading exam for trial judges. We're not trying to say gotcha. Plain error review is about what's fair. And that's what gets us to the third and fourth prongs here. Mr. Castaneda-Montes was sentenced based on a guideline level of 57 to 71 months after two levels of departures. If he had gotten the same two levels of departures and the guideline analysis had been done properly, his range would have been 15 to 21 months. Is there any suggestion here from the record counsel that the trial judge would have given the same sentence even if he would have agreed with the objections to the enhancement? I don't think so. Because the trial judge clearly wanted to give Mr. Castaneda more than 51 months. I think that is clear. But he also said many times during his hearing that I'm keeping the guideline range in mind. I counted four times that he said I'm keeping the guideline range in mind. And if the guideline analysis had been done correctly, it would have been 21 to 27 months with zero departure. So he gave him two levels departure. I think it's hard to believe that the judge would have given him more than twice the high end of the range without a departure if he had known. So I think that with respect to the third and fourth prongs, both this court and now the Supreme Court have made clear that guideline error will generally satisfy the third and fourth prong. And in this case, it's particularly clear because the judge said several times, four times I counted, that I'm keeping the guideline range in mind. Okay. Thank you. Thank both sides for good arguments. United States v. Castaneda-Montes submitted for decision.
judges: W. Fletcher, Gould, Lemelle